A90A1110. MULLINAX v. DOUGHTIE et al.
(396 SE2d 919)

McMURRAY, Presiding Judge.

Chris S. Doughtie, R. W. Williams and J. Randall Garner (plaintiffs) brought an action against Yvonne Mullinax d/b/a Yvonne Mullinax Personnel Service (defendant) to recover unpaid rent, allegedly due as a result of defendant's breach of a commercial lease agreement. Defendant denied the material allegations of the complaint and counterclaimed, alleging that a lack of proper ventilation in the leased premises caused an unsuitable working environment which forced defendant to move her offices and resulted in "damages in the amount of $1,600 moving costs, $34,000 in lost profits in 1988 and $75,000 in lost business opportunities." The case was tried before a jury and the evidence revealed the following:

On February 27, 1987, defendant entered into a lease agreement with plaintiffs and agreed to pay monthly installments in exchange for use of the leased premises for "General Office" purposes. In March of 1987, defendant moved into the leased premises and began conducting business as an employment agency.

Thomas Gray Williams III was a salesman for defendant and defendant relied upon Mr. Williams for a significant volume of her business. Mr. Williams complained to defendant about the stagnant air in the office, a product of defendant and another employee's heavy cigarette consumption, and he asked defendant to stop smoking. Defendant refused to stop smoking and she attributed the odious and stagnant office environment to poor air conditioning ventilation.

In a letter dated July 7, 1987, defendant informed plaintiffs that "[t]he air conditioner is able to maintain a comfortable level of cool but [that] the air is so stale and odious that it is unbearable." In a letter dated August 7, 1987, a representative for plaintiffs informed defendant that they "have hired Joel Granade, architectural engineer, to examine the heating/air conditioning in [defendant's] office [and that defendant will be notified within] ten days . . . of what improvements will be done, and when it will be done."

Joel Granade inspected the system and "told [plaintiffs] that the air conditioning system was performing as it was intended to. [Mr. Granade] felt that to correct [defendant's] complaints or concerns was upgrading the system and he gave [plaintiffs] specifications . . . to modify the system and [an air conditioning contractor] came up with a price which [plaintiffs] quoted to [defendant] of $4,870." Defendant refused to pay for the modifications.

In July 1988, Thomas Gray Williams III gave up his position with defendant, explaining that "there were several reasons [for his resignation], but [that] the main reason was the smoking environment being intolerable." Shortly thereafter, defendant vacated the leased

premises and refused to pay the rent. The jury returned a verdict for plaintiffs " 'in the amount of $22,680 plus $1306.97 interest plus $1602 attorney fees . . .' " and defendant appeals. *Held*:

1. Defendant first contends the trial court erred in denying her motion for directed verdict, arguing that the lease agreement was not enforceable because the air conditioning "system design was inadequate to meet [her] needs." More specifically, defendant argues that "there was no meeting of the minds as to what was required and what would be delivered [and, in this vein, she contends that] there was, at most, a conditional acceptance of the premises [and that a] complete acceptance could only occur when the [plaintiffs] requested and received such acceptance or when [defendant] had an opportunity to determine that she had received all that she had bargained for." In support of this argument, defendant places significance on the deletion of an " 'as is' acceptance" paragraph in plaintiffs' form lease contract, reasoning that the absence of such language from the lease authorized her use of the office space on a trial basis to verify if it was what she intended and, if not, then she could revoke her acceptance, rescind the contract or terminate the contract for "failure of consideration." Alternatively, defendant argues that it was plaintiffs' duty to modify the air conditioning system because it would "necessarily enhance the value of the property." These arguments are without merit.

" 'A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict. (Cits.)' *Carver v. Jones*, 166 Ga. App. 197, 199 (3) (303 SE2d 529) (1983). 'The standard of appellate review of the trial court's denial of a motion for a directed verdict is the "any evidence" standard. (Cits.)' *United Fed. &c. Assn. v. Connell*, 166 Ga. App. 329, 330 (1) (304 SE2d 131) (1983)." *State Farm Fire &c. Co. v. Morgan*, 185 Ga. App. 377 (1) (364 SE2d 62).

In the case sub judice, the evidence authorized findings that defendant agreed to pay monthly installments for a designated period of time in exchange for the use of plaintiffs' office space; that plaintiffs provided the office space and that the office space was suitable for its intended use, "General Office" purposes. More particularly, the evidence showed that plaintiffs had responsibility under the lease agreement to maintain and repair the heating and cooling system at defendant's office and that plaintiffs fulfilled this obligation by providing an air conditioning system which functioned as it was intended — heating, cooling and ventilating air. On the other hand, there is no evidence indicating that plaintiffs agreed to provide defendant with a ventilation system which would purge heavy cigarette smoke from the air. In fact, defendant points to no evidence, and we find none, which would authorize a finding that such a ventilation

system is standard equipment in commercial real estate intended for "General Office" purposes. Consequently, since defendant failed to make payments to plaintiffs according to the lease agreement, the jury's verdict was authorized and the trial court did not err in denying defendant's motion for directed verdict.

2. Next, defendant contends the trial court erred in failing to admit a certified copy of an administrative hearing officer's decision to affirm the denial of Thomas Gray Williams III's application for unemployment compensation. Defendant argues that the trial court's failure to admit the administrative law judge's findings of fact was harmful error because it corroborated much of Mr. Williams' testimony.

"[E]vidence wrongfully withheld is harmless where admissible evidence of the same fact is introduced. [Cits.]" *Patrick v. State*, 150 Ga. App. 266 (1), 267 (257 SE2d 356). In the case sub judice, since the administrative law judge's decision was offered only to corroborate evidence already before the jury, we find no harmful error.

3. In her third enumeration, defendant contends the trial court erred in excluding a letter she prepared and posted to the leasing agent who negotiated the lease agreement between plaintiffs and defendant. The trial court excluded this evidence because "[t]he contents of the letter have already been testified to in full."

Defendant does not challenge the trial court's finding that the contents of the letter were cumulative. Instead, she argues that the letter was "important to [her] credibility. . . ." This argument is without merit for the reason stated in Division 2 of this opinion.

4. In her fourth enumeration, defendant contends "[t]he trial court erred in directing a verdict against [her] claim of total failure of consideration, rejection of the premises or constructive eviction." Much of the argument which supports this enumeration is cumulative of the argument which supports defendant's first enumeration and, for the reasons stated in Division 1 of this opinion, we find it fruitless. However, defendant newly argues that the trial court erred in finding that the evidence was insufficient to support her defense of constructive eviction.

"When a rented building becomes untenantable by reason of the lessor's breach of the obligation to repair, there is said to be a constructive eviction such as will relieve the tenant of rent." George A. Pindar's Georgia Real Estate Law & Procedure, Vol. 1, § 11-49, p. 470 (3rd ed.). It is undisputed, in the case sub judice, that defendant's heating and cooling system was not in need of repair. On the contrary, it was operating as intended. Further, we are directed to no evidence which could possibly support a finding that plaintiffs had a duty to provide defendant with an air conditioning system which purges heavy cigarette smoke and odors from the air. Consequently, since the undisputed evidence shows that defendant's heating and

cooling system was operating as intended and since defendant points to no evidence which could authorize a finding that plaintiffs had a duty to provide her with a more advanced air conditioning system, the trial court did not err in excluding the defendant's constructive eviction defense.

5. Defendant contends in her fifth enumeration that the trial court erred in directing a verdict against her on her counterclaim. We do not agree.

Defendant's counterclaim was wholly dependent upon proof of the allegation that plaintiffs breached a duty to provide an air conditioning system which would clean defendant's smoke-permeated office. This allegation was also the basis of defendant's defense to plaintiffs' breach of contract claim since the jury returned a verdict for plaintiffs on their breach of contract claim, it follows that the jury rejected defendant's contention that plaintiffs had a duty to modify the defendant's air conditioning system. Consequently, even if the trial court erred in directing a verdict on defendant's counterclaim, the error was harmless since the jury found that plaintiffs breached no duty in failing to modify defendant's air conditioning system.

6. In a sixth enumeration, defendant contends "[t]he trial Court erred in charging the jury on the duty of the Landlord to repair and failure of the Landlord to repair." Defendant argues that this charge was not adjusted to the evidence.

"A 'charge touching on a theory not in issue under the evidence, unless prejudicial and harmful as revealed by the entire record, does not require or demand a reversal. *Weaver v. State*, 67 Ga. App. 692 (2b) (21 SE2d 542) (1942)' *Davis v. State*, 167 Ga. App. 701 (1), 702 (307 SE2d 272)." *Green v. State*, 190 Ga. App. 130 (1), 131 (378 SE2d 178). In the case sub judice, we have examined the trial court's charge on a landlord's duty to repair and find nothing which could have misled the jury. This enumeration is without merit.

7. Lastly, defendant contends "[t]he trial Court erred in failing to charge the jury on rescission by mutual mistake of fact."

Defendant failed to make a written request to charge on "rescission by mutual mistake of fact." "Unless the failure to give a charge is harmful as a matter of law to the extent that a gross miscarriage of justice is about to result, the absence of a written request is a waiver of the right to complain on appeal. *Williams v. Kennedy*, 240 Ga. 163 (2) (240 SE2d 51) (1977)." *Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863, 868 (12) (380 SE2d 498). In the case sub judice, we find no likelihood of a miscarriage of justice as a result of the trial court's failure to charge the jury on "rescission by mutual mistake of fact." This enumeration is without merit.

*Judgment affirmed. Carley, C. J., and Sognier, J., concur.*

Decided September 4, 1990.

*Robert C. Sacks*, for appellant.
*Davidson & Fuller, Stephen P. Fuller*, for appellees.